Med1 N.C. Servs., L.L.C. v. Med1 Plus, L.L.C., 2020 NCBC 15.

STATE OF NORTH CAROLINA

ROBESON COUNTY

MED1 NC SERVICES, L.L.C.,

Plaintiff,

v.

MED1 PLUS, L.L.C., GREGORY
STANTON BRYANT,
COMMON CAPITAL, L.L.C.,
DANIEL MORMAN,
DONNA S. GRUENEMEIER, AND
ANGELA WHITE,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 1983

**ORDER AND OPINION ON
DEFENDANTS' MOTIONS TO
DISMISS**

THIS MATTER comes before the Court upon Defendants Common Capital, L.L.C., Daniel Morman, and Angela White's Motion to Dismiss ("CMW Motion," ECF No. 11), and Defendants Med1 Plus, L.L.C., Gregory Stanton Bryant, and Donna S. Gruenemeier's Motion to Dismiss ("MBG Motion," ECF No. 14; collectively, the CMW Motion and the MBG Motion are referred to as the "Motions").

THE COURT, having considered the Motions, the briefs filed in support of and in opposition to the Motions, the arguments of counsel at the hearing on the Motions, the applicable law, and other appropriate matters of record, concludes that the Motions should be GRANTED, in part, and DENIED, in part, for the reasons set forth below.

> *Teague Campbell Dennis & Gorham, LLP, by Matthew J. Little and Damie A. Sesay for Plaintiff Med1 NC Services, L.L.C.*
>
> *The Charleston Group, by Jose A. Coker and Johnathan R. Charleston for Defendants Med1 Plus, L.L.C., Gregory Stanton Bryant, Common Capital, L.L.C., Daniel Morman, Donna S. Gruenemeier, and Angela White.*

McGuire, Judge.

## I. FACTS

1.      Plaintiff Med1 NC Services, L.L.C. ("Plaintiff") is a North Carolina limited liability company with its principal place of business in Lumberton, NC. ("Complaint," ECF No. 5, at ¶¶ 1–2.) Richard Hicks ("Hicks") is the member/manager of Plaintiff. Plaintiff provides non-emergency ambulance services to residents in and around Robeson County, North Carolina. Robeson County solicits bids from qualified non-emergency ambulance providers for the exclusive contractual right to provide their services (the "Robeson County Contract"). Plaintiff was the exclusive provider of non-emergency ambulance services in Robeson County from July 9, 2012 to June 30, 2019. (*Id.* at ¶ 20.)

2.      From approximately 2010 to 2019, Defendant Gregory Stanton Bryant ("Bryant") worked as a consultant for Plaintiff and was responsible for maintaining relationships with Robeson County officials. (*Id.* at ¶ 15.) In his role as consultant, Bryant "had access to Plaintiff's confidential information, including . . . client and employee records . . . [and] detailed information regarding exactly what each employee's roles and responsibilities were, the non-emergency ambulance services that [Plaintiff] provided . . . and all of [Plaintiff]'s clients." (*Id.*)

3.      Plaintiff employed Donna S. Gruenemeier ("Gruenemeier") as a director. (*Id.* at ¶ 16.) As a director, Gruenemeier oversaw Plaintiff's operations and had access to confidential information including: client and employee records; information

regarding the roles and responsibilities of each employee; and the services that Plaintiff provided to Robeson County. (*Id.*)

4.    At all times relevant, Plaintiff operated its business from 2507 Elizabethtown Road in Lumberton. (*Id.* at ¶ 21.) Plaintiff rented the property from Gruenemeier and another individual, H. Jeffrey Stephens, under a lease executed on September 1, 2012. (*Id.*; "Lease Agreement," ECF No. 5 at Ex. C.) Pursuant to the Lease Agreement, the initial lease term was for three years and two months. (ECF No. 5 at Ex. C, p. 2.) The Lease Agreement also contains an "Evergreen Term," providing that after the initial term, Plaintiff "shall occupy the premises for so long as they are in business in Robeson County, North Carolina from and after November 1, 2015." (*Id.*) The Lease Agreement also contains a provision "granting [Plaintiff] ten (10) days from the date of any default, and a written notice to cure the same, to cure any default or else the landlords can exercise any rights of re-entry." (ECF No. 5, at ¶ 21; ECF No. 5 at Ex. C, pp. 6–7.)

5.    Defendant Common Capital, L.L.C. ("Common Capital") is a North Carolina limited liability company with its principal place of business in Kannapolis, North Carolina. (ECF No. 5, at ¶ 5.) Daniel Morman ("Morman") is the Managing Member of Common Capital. (*Id.* at ¶ 6.)

6.    On May 14, 2019, Defendant Med1 Plus, LLC ("Med1 Plus") was registered with the North Carolina Secretary of State. (*Id.* at ¶ 18.) Bryant is listed as Med1 Plus's registered agent. (*Id.* at ¶ 18.) Plaintiff alleges that "Med1 Plus

provides the same services as [Plaintiff] in the same geographical area and is a direct competitor of [Plaintiff]." (*Id.*)

7.      Beginning either sometime in 2018 or early 2019, Bryant, Common Capital, and Morman engaged in negotiations with Hicks for the purchase of Plaintiff. (*Id.* at ¶ 17.)  Plaintiff alleges that throughout the purchase negotiations, "Bryant acted as an agent of [ ] Morman and Common Capital." (*Id.* at ¶ 17.)  An Asset Purchase Agreement was drafted between Hicks and an entity named "Med1, LLC".[1] ("Asset Purchase Agreement," ECF No. 5 at Ex. A.)  Pursuant to the Asset Purchase Agreement, Hicks agreed to sell, assign, or otherwise transfer certain assets to Med1, LLC, which was represented by Bryant.  (ECF No. 5 at Ex. A, p. 1.)  The Asset Purchase Agreement does not expressly provide that any other persons or corporations were parties to the Agreement.  (*See id.*)  The Asset Purchase Agreement was never executed.  (ECF No. 5, at ¶ 17.)

8.      During the negotiations, Bryant requested access to Plaintiff's proprietary information.  "This information included, but was not limited to, [Plaintiff]'s financial records, profit and loss statements, detailed malpractice and automobile insurance information, call volumes, client's non-emergency transport records, and employee records." (*Id.*)  Plaintiff agreed to provide Bryant with the requested information on the condition that Bryant sign a confidentiality agreement. (*Id.*)  On July 28, 2019, Bryant and Hicks, on behalf of an entity named Med1 Services

---

[1] The Complaint does not identify nor allege the existence of an entity named Med1, LLC.

of NC,[2] executed a confidentiality agreement. ("Confidentiality Agreement," ECF No. 5 at Ex. B.) Bryant signed the Confidentiality Agreement in his individual capacity, and the Confidentiality Agreement does not indicate he signed as a representative of Med1 Plus, Common Capital, or Morman. (*Id.* at pp. 1, 5.) The Confidentiality Agreement prohibited Bryant from disclosing Plaintiff's confidential information without prior approval. (ECF No. 5, at ¶ 17.) The Confidentiality Agreement also required Bryant to "return all of [Plaintiff]'s proprietary information upon request or in the event that the parties did not enter into the purchase agreement." (*Id.*)

9. At some unspecified time, Gruenemeier left her position with Plaintiff and commenced employment with Med1 Plus. Plaintiff alleges that Med1 Plus hired Gruenemeier to solicit and entice Plaintiff's "employees to abruptly resign their positions . . . and immediately begin employment with [Med1 Plus]." (*Id.* at ¶ 22.) Plaintiff further alleges that "[t]hese acts were part of a plan or scheme between [Med1 Plus], Bryant, and Gruenemeier to destroy Plaintiff's business, secure the contract to provide non-emergency ambulance services with Robeson County, and enhance Med1 Plus's Business." (*Id.* at ¶ 22.)

10. Plaintiff alleges that Gruenemeier "contacted Plaintiff's employees to entice them to terminate their employment [ ] with Plaintiff and [ ] commence employment with [ ] Med1 Plus." (*Id.* at ¶ 24.) Roughly twenty (20) Plaintiff employees quit and began working for Med1 Plus. (*Id.* at ¶¶ 24, 26.)

---

[2] The Complaint does not identify nor allege the existence of an entity named Med1 Services of NC.

11.    One of the employees who terminated employment with Plaintiff and commenced employment with Med1 Plus was Defendant Angela White ("White"), a dispatcher who had been working for Plaintiff since approximately 2012. (*Id.* at ¶ 27.) While employed with Plaintiff, White had access to Plaintiff's "client data, call volumes, and non-emergency vehicle records." (*Id.*) On June 21, 2019, White left Plaintiff's employment and immediately began working for Med1 Plus. (*Id.*) On June 24, 2019, White "used her former [ ] credentials to log onto Plaintiff's secure patient system and access confidential information." (*Id.*) Plaintiff alleges that White's access of the secure patient system was part of a plan or scheme with the other Defendants to destroy Plaintiff's business. (*Id.*)

12.    In the summer of 2019, Robeson County solicited bids from companies to provide non-emergency ambulance services under the Robeson County Contract. Only Plaintiff and Med1 Plus submitted bids. (*Id.* at ¶ 30.) Plaintiff alleges that it submitted the "lowest responsible, responsive bid." (*Id.*) However, on June 19, 2019, Robeson County rejected Plaintiff's bid and accepted Med1 Plus's bid to be the sole provider of non-emergency ambulance services. (*Id.* at ¶¶ 28–30.) Plaintiff claims that Bryant "used confidential information obtained from Plaintiff during the [Plaintiff] purchase negotiations to secure the [Robeson County Contract]." (*Id.* at ¶ 28.) On July 1, 2019, Med1 Plus became the sole provider of non-emergency ambulance services in Robeson County. (*Id.* at ¶ 29.)

13.    On July 8, 2019, Gruenemeier sent Hicks a letter stating that, as of July 6, 2019, Hicks was in violation of the Lease Agreement. (*Id.* at ¶ 34; ECF No. 5 at

Ex. F.) The letter, however, provided no explanation of the alleged violation. (*See id.*) On the morning of July 8, 2019, Plaintiff's employees "arrived at its business location and observed that chains and padlocks were affixed to the property fence" and could not access the property. (ECF No. 5, at ¶ 34.)

14. On July 15, 2019, Plaintiff initiated this lawsuit by filing the Complaint in the Superior Court of Robeson County making claims for: breach of contract; tortious interference with contract; tortious interference with a prospective economic advantage; unfair or deceptive trade practices in violation of the North Carolina Unfair or Deceptive Trade Practices Act ("UDTPA"); misappropriation of trade secrets in violation of the North Carolina Trade Secrets Protection Act ("TSPA"); common law trademark infringement; breach of fiduciary duty; civil conspiracy; and requesting a preliminary injunction. (ECF No. 5.) On July 24, 2019, this case was designated to the North Carolina Business Court and assigned to the undersigned. (Designation Order, ECF No. 1; Assignment Order, ECF No. 2.)

15. On September 25, 2019, Common Capital, Morman, and White filed the CMW Motion along with a Brief in Support. (ECF No. 11; "CMW Brief in Support," ECF No. 12.) On October 1, 2019, all Defendants filed a single, joint answer to the Complaint, and Bryant filed a counterclaim. ("Answer and CC," ECF No. 13.) Also, on October 1, 2019, immediately after filing the Answer and CC, Med1 Plus, Bryant, and Gruenemeier filed the MBG Motion and a Brief in Support. (ECF No. 14; "MBG Brief in Support," ECF No. 15.)

16.     On October 14, 2019, Plaintiff filed a Brief in Response to the CMW Motion. ("Pl's Response to CMW Motion," ECF No. 18.) On October 16, 2019, Plaintiff filed a Brief in Response to the MBG Motion. ("Pl's Response to MBG Motion," ECF No. 19.) No reply briefs were filed by any Defendants.

17.     On November 4, 2019, Plaintiff filed an Answer to Defendant Bryant's Counterclaim closing the pleadings in this matter. ("Answer to CC," ECF No. 24.)

18.     On December 18, 2019, the Court held a hearing on both Motions at which the Court heard oral argument. The Motions are now ripe for decision.

## II.     ANALYSIS

### A.     Nature of Defendants' Motions

19.     As an initial matter, the Court must determine under what North Carolina Rules of Civil Procedure ("Rules") the CMW Motion and MBG Motion should be considered. Both Motions seek dismissal pursuant to Rule 12(b)(6). A motion to dismiss under Rule 12(b)(6) "shall be made *before pleading* if a further pleading is permitted." N.C.G.S. § 1A-1, Rule 12(b) (emphasis added). Accordingly, this Court has held that under the plain language of Rule 12(b), "a motion to dismiss for failure to state a claim must be . . . filed prior to an answer.*" Johnston v. Johnston Props., Inc.*, 2018 NCBC LEXIS 119, at *14 (N.C. Super. Ct. Nov. 15, 2018); *see also New Friendship Used Clothing Collection, LLC v. Katz*, 2017 NCBC LEXIS 72, at *24 (N.C. Super. Ct. Aug. 18, 2017). Common Capital, Morman, and White filed the CMW Motion, seeking dismissal pursuant to Rule 12(b)(6) on September 25, 2019, prior to the filing of Defendants' Answer and CC. Accordingly, the CMW Motion was filed

before those Defendants filed an answer and is appropriately treated as a motion to dismiss under Rule 12(b)(6).

20.     On the other hand, Defendants filed their joint Answer & CC at 4:44 p.m. on October 1, 2019.  (ECF No. 13.)  Med1 Plus, Bryant, and Gruenemeier filed the MBG Motion two minutes later at 4:46 p.m. on October 1, 2019.   (ECF No. 14.)  Therefore, pursuant to Rule 12(b), the MBG Motion is untimely and cannot be considered as a Rule 12(b)(6) motion to dismiss for failure to state a claim.

21.     However, the Court notes that in *Johnston,* this Court concluded that the interplay between Rules 12(b) and 12(h)(2)[3] permits the Court to treat a post-answer Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings in appropriate circumstances.  *See Johnston*, 2018 NCBC LEXIS 119, at *14–15.  In *Johnston,* the Court, in its discretion, determined that defendants' Rule 12(b)(6) motion filed minutes after their answer could properly be treated as a Rule 12(c) motion because the pleadings had closed at the time of the hearing.  *Id.*

22.     Here, the Court concludes the same.  Plaintiff raised no objection as to the timeliness of the MBG Motion and Plaintiff's Answer to CC was filed prior to the hearing on the MBG Motion.  On these facts, the Court concludes, in its discretion, that the MBG Motion—filed two minutes after Defendants' Answer & CC and heard

---

[3] Rule 12(h)(2) provides "[a] defense of failure to state a claim upon which relief can be granted, a defense of failure to join a necessary party, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits."

after the pleadings had closed—should be treated as a Rule 12(c) motion for judgment on the pleadings.

## B.    Standard of Review

23.    In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).  Our appellate courts frequently reaffirm that North Carolina is a notice pleading state. *See, e.g., Feltman v. City of Wilson*, 238 N.C. App. 246, 252, 767 S.E.2d 615, 620 (2014) (quoting *Wake Cty. v. Hotels.com, L.P.*, 235 N.C. App. 633, 647, 762 S.E.2d 477, 486 (2014)) ("Under notice pleading, a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of res judicata, and to show the type of case brought.").

24.    "It is well established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736–37 (2018) (quoting *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)).

25. In ruling on a 12(b)(6) motion, the court construes the complaint liberally and accepts all allegations as true. *See Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citation omitted).

26. In addition, "when ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001).

27. "A [Rule 12(c)] motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain. When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). "A complaint is fatally deficient in substance, and subject to a motion by the defendant for judgment on the pleadings if it fails to state a good cause of action for plaintiff and against defendant[.]" *Bigelow v. Town of Chapel Hill*, 227 N.C. App. 1, 3, 745 S.E.2d 316, 319 (2013) (citation omitted).

28. When deciding a motion under Rule 12(c), the Court may only consider "the pleadings and exhibits which are attached and incorporated into

the pleadings." *Davis v. Durham Mental Health/Dev. Disabilities/Substance Abuse Area Auth.*, 165 N.C. App. 100, 104, 598 S.E.2d 237, 240 (2004). The Court must "view the facts and permissible inferences in the light most favorable to the nonmoving party." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499. "All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the non-movant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant." *Id.* (internal citations omitted).

29. The Court will first address the CMW Motion and then the MBG Motion.

**C. CMW Motion**

30. In the CMW Motion, Common Capital and Morman seek dismissal of Plaintiff's claim against them for breach of contract and all other claims which Plaintiff may have raised against Common Capital and Morman. White seeks dismissal of Plaintiff's claims against her for breach of fiduciary duty, civil conspiracy, and any other claims that Plaintiff may be attempting to allege against White.

*i. Claims against Defendants Common Capital and Morman*

31. Under a generous reading of the Complaint, the only claims raised against Common Capital and Morman are those alleged in what Plaintiff labels as its first "Count II," for breach of the Confidentiality Agreement. (ECF No. 5, at ¶¶

43–48.)[4] A breach of contract claim requires that the plaintiff allege (1) the existence of a valid contract and (2) a breach of the terms of that contract. *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). Morman and Common Capital argue that the Confidentiality Agreement was not a valid contract as to Morman and Common Capital because the agreement does not name either of them as parties and they did not sign or otherwise execute the agreement. (ECF No. 12, at p. 4.)

32. In support of its claim for breach of contract Plaintiff alleges that (a) Bryant acted as Common Capital's and Morman's "agent" during the negotiations for the purchase of Plaintiff's assets, (b) Bryant executed the Confidentiality Agreement, and (c) "Common Capital and Morman breached the terms of the [C]onfidentiality [A]greement by using, without permission, the confidential information obtained from Plaintiff's [sic] during the" negotiations. (ECF No. 5, at ¶¶ 43–47.) These allegations do not support Plaintiff's claim for breach of contract against Common Capital and Morman.

33. Although Plaintiff does not allege any facts in support of its legal conclusion that Bryant was Common Capital and Morman's agent, even assuming *arguendo* that he was, Bryant expressly executed the Confidentiality Agreement as an "individual," and not on behalf of Common Capital and Morman. (ECF No. 5 at Ex. B, p. 1.) The Confidentiality Agreement states that it is "made" between Med1

---

[4] Plaintiff labels both its second and third causes of action in the Complaint as "Count II." (ECF No. 5, at ¶¶ 43–55.) This results in Plaintiff incorrectly labeling each of its subsequent nine claims. Accordingly, to avoid any confusion, the Court will not reference Plaintiff's claims by their "Count" numbers as contained in the Complaint.

Services of NC and "Gregory Stanton Bryant . . . an individual." (*Id.*) Bryant signed the Confidentiality Agreement in his individual capacity and not as a representative of any other party. (*Id.* at p. 5.) Finally, the Confidentiality Agreement does not make any reference to Common Capital or Morman.

34. The allegations and the terms of the Confidentiality Agreement establish that Common Capital and Morman are not parties to the Confidentiality Agreement. "As a matter of law, a non-party to a contract 'cannot be held liable for any breach that may have occurred.'" *Howe v. Links Club Condo. Ass'n*, 823 S.E.2d 439, 448 (N.C. App. 2018) (quoting *Canady v. Mann*, 107 N.C. App. 252, 259, 419 S.E.2d 597, 601 (1992)). Therefore, to the extent that the CMW Motion seeks dismissal of Plaintiff's claim against Morman and Common Capital for breach of contract, the CMW Motion should be GRANTED.

35. Common Capital and Morman are not expressly named in any of Plaintiff's other claims. In fact, other than identifying Common Capital and Morman (ECF No. 5, at ¶¶ 5–6), Plaintiff does not allege that Common Capital or Morman engaged in any conduct or took any action whatsoever. The Complaint does not attempt to allege their connection to any other parties in the lawsuit, or why they are named as parties. To the contrary, the pleading makes clear that each of Plaintiff's other claims are directed at Defendants other than Common Capital and Morman, and there are no allegations in the Complaint that could support the imposition of liability on Morman and Common Capital for any of the other claims. Therefore, to the extent Plaintiff purports to bring any other claims against Morman and Common

Capital, other than the claim for breach of the Confidentiality Agreement, the CMW Motion should be GRANTED, and all such claims against Morman and Common Capital should be DISMISSED.

## ii. *Claims against White*

36. Plaintiff alleges claims against White for breach of fiduciary duty and civil conspiracy. (*Id.* at ¶¶ 99–109.)

### a. Breach of Fiduciary Duty

37. "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Green v. Freeman,* 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013) (quotation and citation omitted). Fiduciary relationships are broadly defined by North Carolina's appellate courts and include "any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and *resulting domination and influence on the other.*" *Kaplan v. O.K. Techs., L.L.C.,* 196 N.C. App. 469, 472, 675 S.E.2d 133, 136 (2009) (emphasis added) (quoting *Dalton v. Camp,* 353 N.C. 647, 651, 548 S.E.2d 704, 707–08 (2001)).

38. However, North Carolina courts have held that generally "the relation of employer and employee is not one of those regarded as confidential." *Dalton,* 353 N.C. at 652, 548 S.E.2d at 708 (holding that a certain level of confidence is reposed in all employees and all employees are bound to act in good faith with regard to their employers; to show that a fiduciary relationship exists, an employer must show that the employee's position results in "domination and influence" over the employer); *see also Austin Maint. & Constr., Inc. v. Crowder Constr. Co.,* 224 N.C. App. 401, 410,

742 S.E.2d 535, 542 (2012) (stating that "in the absence of some unusual set of facts that would suffice to differentiate the relationship [at issue] from other employer-employee relationships, [an employee does] not have a fiduciary [duty]").

39.     Plaintiff alleges that "White had direct and constant access to Plaintiff's clients and confidential information.  In connection with this direct access, Defendant White had the ability to influence Plaintiff's business and business relationships." (ECF No. 5, at ¶ 100.)  Plaintiff "placed a special confidence and trust in [White] to act in good faith and good conscience with respect to honoring and protecting Plaintiff's business . . . [providing White] the ability to dominate, influence, and control Plaintiff's business."  (*Id*. at ¶ 101.)  Plaintiff argues that a fiduciary relationship existed between White and Plaintiff because White had unique access to and influence over "Plaintiff's business and business relationships with [its] clients." (ECF No. 18, at p. 7.)

40.     In support of dismissal, White argues that the Complaint fails to state a claim against her because Plaintiff has failed to "allege sufficient facts to differentiate the relationship between Plaintiff and Defendant White from other employer-employee relationships."  (ECF No. 12, at p. 10.)

41.     The Court concludes that Plaintiff has failed to sufficiently plead the existence of a fiduciary relationship between White and Plaintiff.  Plaintiff has merely alleged that White was a dispatcher, or in other words, an employee. Plaintiff's allegations that White dominated, controlled, and influenced Plaintiff's business relationships are conclusory and are not supported by facts.  The facts

alleged by Plaintiff are strikingly similar to those present in *Coordinated Health Serv., Inc. v. Primary Health Choice, Inc.*, 2006 N.C. App. LEXIS 525 (Mar. 7, 2006) (unpublished). The plaintiff in Coordinated Health Services ("plaintiff") and defendant Primary Health Choice ("Primary") were competitors in the business of providing in-home care to patients. 2006 N.C. App. LEXIS 525, at *1–2. Co-defendants Davis and Hagins left plaintiff's employment and became Primary's principal officers. *Id.* The plaintiff sued Davis, Hagins, and Primary alleging that they were:

> competing in the same business and in the same geographic area where they were employed by plaintiff; that plaintiff [ ] created training manuals and other business materials which it treats as trade secrets; that the individual defendants either removed or copied such materials and are using them in their new business; that other former employees of Coordinated have accepted employment with Primary [ ]; that the defendants removed or copied confidential client medical records and used them to solicit business from Coordinated clients; and that the defendants are now providing services to clients or consumers who formerly were served by Coordinated.

*Id.* at *3.

42. Plaintiff brought claims against Davis and Hagins for, *inter alia*, breach of fiduciary duty. *Id.* The trial court granted the defendants' motion for summary judgment on the claims for breach of fiduciary duty, and plaintiff appealed. *Id.* at *4. The Court of Appeals affirmed the grant of summary judgment, holding:

> In the instant case, defendants Davis and Hagins were "at-will" employees of plaintiff and neither had signed a covenant not to compete with plaintiff. Both Davis and Hagins were "qualified professionals" in plaintiff's Lumberton office supervising plaintiff's direct care staff

and acting as liaison between the area mental health programs, patients and the patient's families. [Defendants] Davis and Hagins each had access to confidential medical information of the patients served by plaintiff. However, these factors are not sufficient to establish a fiduciary duty on the part of Davis and Hagins. As in *Dalton*, they "merely serve to define the nature of virtually all employer-employee relationships; without more, they are inadequate to establish [an employee's] obligations as fiduciary in nature." *Dalton*, 353 N.C. at 652, 548 S.E.2d at 708. There is no showing that plaintiff was "subjugated to the improper influences or domination" of either Davis or Hagins and thus we cannot conclude that a fiduciary relationship existed between plaintiff and Davis or Hagins.

*Id.* at *9.

43. Plaintiff has not alleged how White's role as a dispatcher, even given her access to confidential information and contact with patients, resulted in domination and control of Plaintiff. Therefore, to the extent that the CMW Motion seeks dismissal of Plaintiff's claim against White for breach of fiduciary duty, the CMW Motion should be GRANTED.

### b.   Civil Conspiracy

44. Plaintiff alleges that "[t]here existed an agreement between all of the Defendants . . . to perform certain unlawful acts" that constituted a civil conspiracy. (ECF No. 5, at ¶ 107.)

45. "There is no independent cause of action for civil conspiracy. Only when there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to carry out the conduct and injury resulting from the agreement." *Toomer v. Garrett*, 155 N.C. App.

462, 483, 574 S.E.2d 76, 92 (2002). "The charge of conspiracy itself does nothing more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under proper circumstances the acts and conduct of one might be admissible against all." *Shope v. Boyer*, 268 N.C. 401, 405, 150 S.E.2d 771, 774 (1966); *see also GoRhinoGo, LLC v. Lewis*, 2011 NCBC LEXIS 39, at *20 (N.C. Super. Ct. Sept. 9, 2011) ("Having joined the conspiracy, [two individual defendants] became exposed to liability with [co-defendant] and any other co-conspirators for damages caused by any act in furtherance of the common scheme.").

46.     To plead a civil conspiracy, a plaintiff must allege: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Piraino Bros., LLC v. Atlantic Fin. Grp., Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011).

47.     While Plaintiff alleges, in conclusory fashion, that Defendants were in "agreement" as to an unlawful scheme to secure the Robeson County Contract, the Complaint fails to state how, when, or why White became part of the agreement, or how she contributed to the scheme. Instead, Plaintiff repeatedly alleges that Med1 Plus, Bryant, and Gruenemeier were the parties who concocted and carried out the scheme. (ECF No. 5, at ¶¶ 22–25, 28.)

48.     Plaintiff contends that it has adequately pleaded that White was part of the conspiracy by alleging in the Complaint that:

> As part of the Defendants' plan or scheme to ensure Med1
> Plus'[s] success to Plaintiff's detriment, White abruptly

> resigned from her position with Plaintiff on June 21, 2019, and immediately commenced employment at Med1 Plus. On June 24, 2019, White, a Med1 Plus employee at the time, used her former Med1 credentials to log on to Plaintiff's secure patient system and access the aforementioned confidential trade secrets as part of the plan or scheme.

(ECF No. 18, at p. 6.)

49. White argues that the Plaintiff's civil conspiracy claim fails because "[i]t is well settled that '[i]n North Carolina, absent an employment contract for a definite period of time, both employer and employee are generally free to terminate their association at any time and without reason.'" (ECF No. 12 at p. 8; citing *Head v. Adams Farm Living, Inc.*, 242 N.C. App. 546, 551–52, 775 S.E.2d 904, 909 (2015).) And therefore, "[t]he Complaint fails to adequately plead an underlying claim or wrongful act." (ECF No. 12, at p. 8.)

50. While White may not have committed an underlying wrong by abruptly leaving the employ of Plaintiff, there is an additional, specific allegation pertaining to her actions after she left Plaintiff—that she used her former credentials, without permission, to access Plaintiff's system. Moreover, Plaintiff has alleged that all "Defendants" agreed to carry out unlawful acts, resulting in injury to Plaintiff, pursuant to a common scheme. (ECF No. 5, at ¶ 107–09.) The Court concludes that the allegations in the Complaint are sufficient to state a claim against White for civil conspiracy. Therefore, to the extent that the CMW Motion seeks dismissal of Plaintiff's claim for civil conspiracy against White, the CMW Motion should be DENIED.

51. Aside from Plaintiff's claims for breach of fiduciary duty and civil conspiracy, the Court is unable to find any allegations in the Complaint that can be construed as asserting a claim against White. Therefore, to the extent Plaintiff purported to direct any other claims against White, Plaintiff's purported claims are DISMISSED.

**D.    MBG Motion**

52. In the MBG Motion, Med1 Plus, Bryant, and Gruenemeier seek judgment on Plaintiff's claims against them for tortious interference with contract, tortious interference with prospective economic advantage, violations of the UDTPA, misappropriation of trade secrets, common law trademark infringement, and civil conspiracy. (ECF No. 15, at pp. 3–8.)  The Court will address each claim and the arguments for judgment dismissing them in turn.

a.    <u>Tortious    Interference    with    Contract    (Client Contracts)</u>

53. Plaintiff alleges that Bryant, Med1 Plus, and Gruenemeier tortiously interfered with Plaintiff's performance of the Robeson County Contract. (ECF No. 5, at ¶¶ 57–60.)  To plead a claim for tortious interference, a claimant must allege:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Lab., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).

54. In the Complaint, Plaintiff alleges that: "valid contracts . . . existed between Plaintiff and Robeson County conferring upon Plaintiff a contractual right to receive payments in consideration for providing non-emergency medical services;" "all Defendants were [ ] aware of the existence of [the Robeson County Contract];" and "Bryant, Med1 Plus, and Gruenemeier intentionally solicited Plaintiff's employees to abruptly resign their positions . . . to facilitate a plan or scheme to prevent Plaintiff from providing transport to patients who need medical care as required by the [Robeson County Contract]." (ECF No. 5, at ¶¶ 57–59.) However, Plaintiff does not allege that the solicitation of its employees resulted in Plaintiff being unable to perform any services required under the Robeson County Contract or that Robeson County did not pay Plaintiff as required as a result of the alleged interference. At the hearing, Plaintiff's counsel conceded that, notwithstanding Bryant, Med1 Plus, and Gruenemeier's misconduct, Plaintiff was able to meet all of its obligations under the Robeson County Contract and suffered no loss of revenue.

55. The Court concludes that Plaintiff has failed to sufficiently plead a claim for tortious interference with the Robeson County Contract prior to its expiration because Plaintiff has not alleged that it was damaged by any interference. There is no allegation that Plaintiff's performance of the Robeson County Contract was thwarted, or that Plaintiff lost revenue or other value during the months leading up to its failure to secure the renewal of the Robeson County Contract. Therefore, to the extent the MBG Motion seeks judgment on the pleadings with respect to

Plaintiff's claim for tortious interference with the Robeson County Contract prior to its expiration, it should be GRANTED, and the claim is dismissed without prejudice.[5]

b.     Tortious Interference with Prospective Economic Advantage

56.    Plaintiff also alleges a claim against Med1 Plus, Bryant, and Gruenemeier for tortious interference with prospective economic advantage for interfering with Plaintiff's bid to renew the Robeson County Contract. (ECF No. 5, at ¶¶ 68–75.) Plaintiff alleges that Plaintiff and Med1 Plus were the only bidders for the Robeson County Contract in or around June 2019, and that Med1 Plus used confidential information, acquired from Plaintiff by Bryant, to secure the Robeson County Contract to provide non-emergency ambulance services. (*Id.* at ¶¶ 69–72.) Plaintiffs also alleges that Med1 Plus, Bryant, and Gruenemeier solicited and hired away Plaintiff's employees as part of a plan or scheme to impede Plaintiff's ability to successfully bid for the renewal of the Robeson County Contract. (*Id.* at ¶¶ 22–26, 28–30.) Plaintiff further avers that "Defendants' conduct" was "pursuant to the scheme or plan to destroy Plaintiff's business" and "was without justification [and] malicious." (*Id.* at ¶¶ 73–74.)

57.    "An action for tortious interference with prospective economic advantage is based on conduct by the defendants which prevents the plaintiffs from

---

[5] Notwithstanding the Court's conclusions that certain claims should be dismissed, "[t]he decision to dismiss an action with or without prejudice is in the discretion of the trial court." *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191, 749 S.E.2d 289, 292 (2013). The Court concludes, in the exercise of its discretion, that dismissal of the claim for tortious interference with contract should be without prejudice to Plaintiff's right to attempt to reassert such claim through proper factual allegations by way of a motion to amend.

entering into a contract with a third party." *Walker v. Sloan,* 137 N.C. App. 387, 392–93, 529 S.E.2d 236, 241 (2000) (citing *Owens v. Pepsi Cola Bottling Co.*, 330 N.C. 666, 680, 412 S.E.2d 636, 644 (1992)). A claim for tortious interference with prospective economic advantage requires a plaintiff to show that the defendant "interfere[d] with a business relationship 'by maliciously inducing a person not to enter into a contract with [the plaintiff], which he would have entered into but for the interference, . . . if damage proximately ensues, when this interference is done not in the legitimate exercise of the interfering person's rights.'" *Beverage Sys. of the Carolinas, LLC v. Associated Bev. Repair, LLC*, 368 N.C. 693, 701, 784 S.E.2d 457, 463 (2016) (quoting *Spartan Equip. Co. v. Air Placement Equip. Co.*, 263 N.C. 549, 559, 140 S.E.2d 3, 11 (1965)). "Stating a claim for tortious interference with prospective economic advantage requires that the plaintiff allege facts [] show[ing] that the defendants acted without justification in inducing a third party to refrain from entering into a contract with them[,] which contract would have ensued but for the interference." *Cheryl Lloyd Humphrey Land Inv. Co., LLC v. Resco Prods.*, 831 S.E.2d 395, 403 (2019) (quotation omitted).

58.     Bryant, Med1 Plus, and Gruenemeier argue that Plaintiff's tortious interference with prospective economic advantage claim should be dismissed because Plaintiff alleges that Med1 Plus was a "competitor," and therefore was justified in interfering with Plaintiff's bid on the Robeson County Contract. (ECF No. 15, at pp. 4–5; citing *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC,* 189 N.C. App. 601, 615, 659 S.E.2d 442, 453 (2008).)

59. The Court concludes that Plaintiff has alleged facts sufficient to support its claim for tortious interference with prospective economic advantage. Plaintiff has alleged that Defendants used Plaintiff's confidential information without justification to secure a contract that Plaintiff, as the only other bidder for the contract, would have received but for Defendants' actions. Plaintiff also alleges that Defendants' interference was motivated by a scheme to "destroy Plaintiff's business." (ECF No. 5, at ¶¶ 22, 28, 73.) This Court has recognized that "these types of allegations, made for the most part 'upon information and belief' and using inflammatory language, are easily concocted, particularly in the immediate aftermath of a competitor's soliciting away [p]laintiff's key employees and customers." *Bldg. Ctr., Inc. v. Carter Lumber, Inc.*, 2016 NCBC LEXIS 79, at *22 (N.C. Super. Ct. Oct. 21, 2016). However, Plaintiff contends that while it alleges that Med1 Plus, having won the Robeson County Contract, is *now* a competitor, at the time it solicited away Plaintiff's employees and was bidding on the renewal of the Robeson County Contract, Med1 Plus was only seeking to be in the business of providing non-emergency ambulance services. (ECF No. 19, at pp. 3–4.)

60. In other words, Plaintiff has raised an issue as to whether Med1 Plus was a competitor at the time of the alleged unlawful interference. Therefore, the Court finds that the allegations in this case are enough to survive the motion for judgment on the pleadings, at least until further discovery can be conducted by the parties. Accordingly, to the extent the MBG Motion seeks judgment as to Plaintiff's

claim for tortious interference with prospective economic advantage against Med1 Plus, Bryant, and Gruenemeier, it should be DENIED.

c.    Violation of the UDTPA

61.    Plaintiff alleges that Bryant, Med1 Plus, and Gruenemeier engaged in unfair or deceptive trade practices in violation of the UDTPA.  (ECF No. 5, at ¶¶ 77–81.)  "To plead a valid claim for [violation of the UDTPA], a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Krawiec v. Manly*, 370 N.C. 602, 612, 811 S.E.2d 542, 550 (2018) (citation and quotation omitted).

62.    Plaintiff argues that "Defendants' conduct was in and affecting commerce . . . was both unfair and deceptive, pertained, in part to their use of Plaintiff's confidential information and solicitation of Plaintiff's employees" and designed to destroy Plaintiff's business and obtain the Robeson County Contract to supply non-emergency ambulance services.  (ECF No. 5, at ¶¶ 77–78.)  Bryant, Med1 Plus, and Gruenemeier argue that Plaintiff's UDTPA claim should be dismissed because "[a] mere breach of contract, even if intentional, is not an unfair or deceptive act under Chapter 75."  (ECF No. 15, at p. 5; citing *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989).)  Bryant, Med1 Plus, and Gruenemeier contend that "[t]he Complaint fails to allege, independent of the alleged acts that constitute breach of contract, any substantial aggravating circumstances or unfair and deceptive practices."  (ECF No. 15, at p. 6.)

63. Defendants' argument for dismissal of Plaintiff's UDTPA claim misses the mark. Plaintiff does not need to allege a substantial aggravating circumstance to support its UDTPA claim. The Court has already determined that Plaintiff has sufficiently pleaded a claim for tortious interference with a prospective economic advantage, which can serve as the basis for a UDTPA claim. *United Laboratories, Inc.*, 322 N.C. at 664, 370 S.E.2d at 389; *Roane-Barker v. Southeastern Hosp. Supply Corp.,* 99 N.C. App. 30, 41, 392 S.E.2d 663, 670 (1990). Also, as explained more thoroughly below, Plaintiff has sufficiently pleaded a claim for misappropriation of trade secrets. *Ge Betz, Inc. v. Conrad*, 231 N.C. App. 214, 236, 752 S.E.2d 634, 650 (2013) (holding that a violation of the TSPA can form the basis of a UDTPA claim); *Drouillard v. Keister Williams Newspaper Services, Inc.*, 108 N.C. App. 169, 172–73, 423 S.E.2d 324, 326–27 (1992) (same); *Medical Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 659–60, 670 S.E.2d 321, 329 (2009) (same). Therefore, Plaintiff's claim for violation of the UDTPA against Bryant, Med1 Plus, and Gruenemeier survives the motion for judgment on the pleadings.

64. To the extent the MBG Motion seeks judgment on the pleadings with respect to Plaintiff's UDTPA claim against Med1 Plus, Bryant, and Gruenemeier, it should be DENIED.

d.      Misappropriation of Trade Secrets

65. Plaintiff asserts a claim for misappropriation of trade secrets against Med1 Plus, Bryant and Gruenemeier. (ECF No. 5, at ¶¶ 83–90.) The allegations necessary to state a claim for misappropriation of trade secrets are well established.

*See Krawiec,* 370 N.C. at 609, 811 S.E.2d at 547–48; *Washburn v. Yadkin Valley Bank & Tr. Co.,* 190 N.C. App. 315, 326–27, 660 S.E.2d 577, 585–86 (2008); *Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.,* 160 N.C. App. 520, 525, 586 S.E.2d 507, 511 (2003).

66. In support of their motion, Med1 Plus, Bryant, and Gruenemeier argue that the "Complaint fails to allege with sufficient particularity what Defendants Med1 Plus, Bryant, or Gruenemeier [ ] misappropriated." (ECF No. 15, at p. 6.) The Court disagrees. On the contrary, the Complaint alleges that the trade secrets at issue include:

> [C]lient and employee records, detailed information regarding what each employee's roles and responsibilities were, the non-emergency ambulance services [Plaintiff] provided to Robeson County, [Plaintiff]'s financial records, profit and loss statements, detailed malpractice and automobile insurance information, call volumes, clients' non-emergency ambulance transport records, non-emergency vehicle records, and training policies and procedures.

(ECF No. 5, at ¶ 85.)

67. The Complaint also alleges that Plaintiff took measures to protect its trade secrets by "restricting access, . . . having employees agree to maintain the secrecy of the information, . . . and having Defendant Bryant execute [the Confidentiality Agreement]." (ECF No. 5, at ¶ 86.) Finally, Plaintiff alleges that Bryant and Gruenemeier obtained access to the information and, in turn, provided the information to Med1 Plus who then used the information to acquire the Robeson County Contract. (ECF No. 5, at ¶¶ 87–88.)

68.    These allegations are sufficient to state a claim for misappropriation of trade secrets in North Carolina.   Therefore, to the extent the MBG Motion seeks judgment on the pleadings with respect to Plaintiff's claim for misappropriation of trade secrets, it should be DENIED.

### e.    Trademark Infringement

69.    Plaintiff alleges that "[Plaintiff] exclusively used the name 'Med1' throughout the duration of its contractual relationship with Robeson County" and "[Plaintiff] promoted its services to such an extent that its name is instantly associated with non-emergency ambulance services in Robeson County."  (ECF No. 5, at ¶¶ 92–93.)  Med1 Plus has registered and is using its name "with the intention of confusing the citizens of Robeson County and as a direct and sole competitor of [Plaintiff], Defendant Med1 Plus chose to provide the exact same services as [Plaintiff] in the exact same geographical market." (*Id*. at ¶ 94.)  Plaintiff claims that, as a result, "Defendants" have infringed on its common law trademark rights. (*Id*. at ¶ 98.)

70.    In support of the MBG Motion, Med1 Plus, Bryant, and Gruenemeier do not argue that Plaintiff fails to sufficiently allege a claim for trademark infringement. Rather, they argue that "[t]o the extent that the Complaint alleges facts sufficient to state a claim for common law trademark infringement, the Complaint only alleges that Defendant Med1 Plus committed a trademark violation . . . [t]herefore, the Court should dismiss Defendants Bryant and Gruenemeier." (ECF No. 15, at p. 7.)  Med1

Plus, Bryant, and Gruenemeier do not seek judgment on Plaintiff's claim for infringement against Med1 Plus.

71.     The Court concludes that Plaintiff's Complaint does not allege a trademark violation against Gruenemeier.  Gruenemeier's name does not appear under Plaintiff's cause of action for trademark infringement nor are there any allegations in the Complaint that connect Gruenemeier in any way to Med1 Plus's ownership or that suggest she played any part in selecting its name.  Accordingly, to the extent that the MBG Motion seeks judgment as to Plaintiff's claim for common law trademark infringement against Gruenemeier, the motion should be GRANTED.

72.     On the other hand, the Court concludes that Plaintiff has, arguably, pleaded facts sufficient to state a claim for trademark infringement against Bryant. Plaintiff alleges that Bryant is listed as the registered agent for Med1 Plus and that he acted on behalf of Med1 Plus in negotiating for the Robeson County Contract. (ECF No. 5, at ¶¶ 17–18.)  These allegations raise the inference that Bryant both has an ownership interest in Med1 Plus and created the name Med1 Plus, and that he could be liable for an infringement of Plaintiff's name.  Therefore, to the extent the MBG Motion seeks judgment as to Plaintiff's claim for trademark infringement against Bryant, the motion should be DENIED.

f.     Civil Conspiracy

73.     Finally, Plaintiff alleges a civil conspiracy theory against all Defendants.  (ECF No. 5, at ¶¶ 107–09.)  The applicable law for analyzing a claim for civil conspiracy are set out in paragraphs 45 and 46 *supra*.

74. Plaintiff alleges that "[t]here existed an agreement between all Defendants, a common plan or scheme to perform certain unlawful acts" as alleged throughout the Complaint. (ECF No. 5, at ¶ 107.) Plaintiff further alleges that it "sustained an injury, which was inflicted by one or more of the conspirators . . . [and] Defendants are jointly and severally liable for the conduct of each other pursuant to their civil conspiracy." (*Id.* at ¶¶ 107–08.)

75. Preliminarily, the Court finds Plaintiff's allegations pertaining to its claim for civil conspiracy to be sufficient to survive a motion for judgment on the pleadings. However, Defendants argue that the doctrine of intra-corporate immunity bars Plaintiff's claim of civil conspiracy. (ECF No. 15, at pp. 7–8.)

76. North Carolina's appellate courts have held that "[t]he doctrine of intra-corporate immunity provides that because at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself, just as an individual cannot conspire with himself." *Conleys Creek Limited Partnership v. Smoky Mt. Country Club Prop. Owners Ass'n,* 255 N.C. App. 236, 250, 805 S.E.2d 147, 156 (2017) (quotation marks omitted). "[A]n allegation that a corporation is conspiring with its agents, officers or employees is tantamount to accusing a corporation of conspiring with itself[,] and is therefore insufficient to establish a claim for civil conspiracy." *Seguro-Suarez v. Key Risk Ins. Co.,* 819 S.E.2d 741, 754–55 (N.C. App. 2018) (internal citation and quotations omitted). Yet, "an exception to the doctrine exists if the corporate agent has an 'independent personal stake in achieving the corporation's illegal objective.'" *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC,* 184 N.C. App.

613, 625, 646 S.E.2d 790, 799, *aff'd in part, rev'd in part*, 362 N.C. 431, 666 S.E.2d 107 (2008) (quoting *Buschi v. Kirven*, 775 F.2d 1240, 1251–52 (4th Cir. 1985)).

77.     Med1 Plus, Bryant, and Gruenemeier argue that the

> Complaint fails to allege facts that the Defendants' actions served any other purpose than benefiting Med1 Plus. In fact, the Complaint repeatedly states that the alleged actions taken by all of the Defendants were substantively pursuant to the direction of, employment by, or for the benefit of, Defendant Med1 Plus. [(ECF No. 5, at ¶¶ 22–25, 30, 31, 40, 47, 54, 59, 62, 72, 78, 87.)] Furthermore, the Complaint repeatedly states that the Defendant[s] were agents and employees of Defendant Med1 Plus. [(ECF No. 5, at ¶¶ 4, 17, 22, 30, 31, 40, 47, 54, 59, 62, 72, 78, 87.)]

(ECF No. 15, at pp. 7–8.)

78.     In its brief in opposition to the MBG Motion, Plaintiff correctly states the law regarding civil conspiracy and the intra-corporate immunity doctrine. (ECF No. 19, at pp. 12–13.)  However, Plaintiff then proceeds to restate the allegations in its Complaint rather than directly responding to Med1 Plus, Bryant, and Gruenemeier's arguments.  (*See* ECF No. 19, at pp. 13–15.)  The Court notes that Plaintiff argues in its response brief that the intra-corporate immunity doctrine is inapplicable because Plaintiff "has alleged a conspiracy between all of the Defendants, including Common Capital and Morman, who are neither agents of, nor employees of Med1 Plus." (ECF No. 19, at p. 15.)  The Court, however, has already concluded that the Complaint fails to allege any liability on the part of Common Capital and Morman.  In the Court's view, Plaintiff has failed to adequately respond to Med1 Plus, Bryant, and Gruenemeier's arguments for judgment on Plaintiff's claim for civil conspiracy.

79.     Nevertheless, the Complaint "should be 'liberally construed, and the court should not dismiss the complaint unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief.'" *State ex rel. Cooper*, 184 N.C. App. at 625, 646 S.E.2d at 799 (quoting *Bowman v. Alan Vester Ford Lincoln Mercury,* 151 N.C. App. 603, 606, 566 S.E.2d 818, 821 (2002)).  Here, the Complaint is vague with respect to the timeline of certain events. Further discovery may unearth evidence tending to show that White was conspiring with Bryant, Med1 Plus, and Gruenemeier prior to becoming an employee of Med1 Plus.

80.     Likewise, the evidence may show that Gruenemeier conspired with Bryant and Med1 Plus prior to joining Med1 Plus as an employee.  In any event, further discovery is needed to develop the record in this case to enable the Court to assess whether Plaintiff's claim for civil conspiracy is barred by the doctrine of intra-corporate immunity.  Therefore, to the extent the MBG Motion seeks judgment as to Plaintiff's claims for civil conspiracy against Med1 Plus, Bryant, and Gruenemeier, the motion should be DENIED.

THEREFORE, it is ORDERED as follows:

1. The CMW Motion is GRANTED as to Plaintiff's claims against Common Capital and Morman.

2. The CMW Motion is DENIED as to Plaintiff's claim for Civil Conspiracy against White.  The CMW Motion is GRANTED as to Plaintiff's remaining claims against White.

3. The MBG Motion is GRANTED WITHOUT PREJUDICE as to Plaintiff's claim for Tortious Interference with Contract.

4. The MBG Motion is GRANTED as to Plaintiff's claim for Common Law Trademark Infringement against Gruenemeier. The MBG Motion is DENIED as to Plaintiff's claim for Common Law Trademark Infringement against Bryant.

5. The MBG Motion is DENIED as to Plaintiff's claims for Tortious Interference with Prospective Economic Advantage; Violation of the UDTPA; Misappropriation of Trade Secrets; and Civil Conspiracy.


SO ORDERED, this the 26th day of February 2020.


/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
for Complex Business Case